Martin HARRIS, Albert Anthony, Orlando X. McCrea, Tyrone Glenn, Carlos Royster, Amin Abdullah, Khalid Allah Muhammad, and Arnold Furtick, Charles Oakes, Emanuel Gardner

v.

Irene PERNSLEY, individually and in her official capacity as Commissioner of the Department of Human Services of the City of Philadelphia, Royal L. Sims, Rev. Albert Campbell, Labora Bennett, James Barber, Mark Mendel, Donald Padova, each individually and in his or her official capacity as a member of the Board of Trustees of the Philadelphia Prison System, David S. Owens, individually and in his official capacity as Superintendent of the Philadelphia Prison System, Gueton Curione, individually and in his official capacity as Warden of Holmesburg Prison, Phillip Dukes, individually and in his official capacity as Warden of the Detention Center, John Daughen, individually and in his official capacity as Warden of the House of Corrections, Rodney D. Johnson, individually, Leo C. Brooks, individually, James S. White, individually and in his official capacity as Managing Director of the City of Philadelphia, William J. Green, individually, Hon. Wilson Goode, individually and in his official capacity as Mayor of the City of Philadelphia, City of Philadelphia, Jay C. Waldman, individually and in his official capacity as General Counsel for the Commonwealth of Pennsylvania, Ronald J. Marks, individually, Glen Jeffes, individually and in his official capacity as Commissioner of the Pennsylvania Department of Corrections.

Civ. A. No. 82–1847.

United States District Court,
E.D. Pennsylvania.

Feb. 19, 1987.

David Richman & Philip H. Lebowitz, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiffs.

Richard J. Golo, Chief Deputy City Solicitor and Guy J. Villim, Asst. City Solicitor; Law Dept.; Philadelphia, Pa., for City defendants.

Carl Vaccaro, Deputy General Counsel, Harrisburg, Pa., for defendants Marks and Jeffes.

Rosalyn Robinson, Deputy Gen. Counsel, Harrisburg, Pa., for defendant Waldman.

Sarah Vandenbraak & Gaele Barthold, Asst. Dist. Attys., Philadelphia, Pa., for District Attorney of Philadelphia Ronald Castille.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

On December 31, 1986, this court entered orders denying the motion to intervene of the District Attorney of Philadelphia County, Ronald D. Castille, 113 F.Supp. 615, and approving a settlement between the City defendants[1] and the plaintiff-prisoner class. Presently before the court is the District Attorney's motion to stay implementation of the settlement agreement to which the District Attorney is not a party, pending appeal of this court's denial of his motion to intervene as a party defendant and oppose entry of the consent order approving plaintiffs' settlement with some but not all the defendants. For the reasons now stated, the motion for a stay delaying the phased implementation of the consent order until the District Attorney's appeal is decided is denied.

This civil rights class action concerning conditions of confinement in City of Philadelphia penal institutions was instituted pursuant to 42 U.S.C.A. § 1983 (West 1981) by ten inmates of Holmesburg Prison in April, 1982.[2] On August 19, 1986, the District Attorney moved to intervene as a party defendant. After written submissions by the District Attorney, the plaintiff-prisoner class and the City defendants, a lengthy evidentiary hearing and oral argument, the court denied the District Attorney's motion to intervene on December 31, 1986. The court subsequently entered a consent order that same date. In that Order, the court approved the settlement between the plaintiff-prisoner class and the City defendants in accordance with Fed.R. Civ.P. 23(e). All claims against the City defendants were dismissed with prejudice. In addition, pursuant to Fed.R.Civ.P. 41(a)(1), the court dismissed all claims against defendants Marks and Jeffes without prejudice. The action proceeds against defendant Waldman only because Waldman has refused to agree to his dismissal without prejudice; plaintiff's class counsel is presently precluded by a conflict of interest from pursuing this matter. Until plaintiff's class representative obtains new counsel, this matter cannot be closed.

On January 8, 1987, the District Attorney filed a notice of appeal of the order denying his motion to intervene and the consent order approving the settlement agreement. On January 14, 1987, pursuant to Fed.R.Civ.P. 62(c), the District Attorney applied to this court for a stay of the consent order pending appeal. On January 29, 1987, the City defendants and the plaintiff-prisoner class filed responses opposing the motion for stay.

Rule 62(c) provides *inter alia:*

---

1. The term City defendants refers to all defendants represented by the City Solicitor. The group includes all defendants except Waldman, Marks and Jeffes.

2. The procedural history of this action was detailed by this court in its Memorandum and Order denying the motion to intervene of the District Attorney of Philadelphia. *See Harris v. Pernsley,* 113 F.R.D. 615, 617–619 (E.D.Pa.1986).

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Fed.R.Civ.P. 62(c).

■ "A request for stay is addressed to the sound discretion of the court." *First Amendment Coalition v. Judicial Inquiry and Review Board*, 584 F.Supp. 635, 637 (E.D.Pa.1984) (Pollak, J.), *vacated and remanded on other grounds*, 784 F.2d 467 (3d Cir.1986) (quoting *Evans v. Buchanan*, 424 F.Supp. 875, 879–80 (D.Del.1976), *aff'd as modified*, 555 F.2d 373 (3d Cir.), *cert. denied*, 434 U.S. 880, 95 S.Ct. 235, 54 L.Ed.2d 160 (1977) (citing *Coppedge v. Franklin County Board of Education*, 293 F.Supp. 356, 362 (E.D.N.C.1968); *Hobson v. Hansen*, 44 F.R.D. 18, 21 (D.D.C. 1968), *aff'd in part and rev'd in part*, 408 F.2d 175 (D.C.Cir.1969)). In exercising its discretion, the court must balance the equities and determine whether the movant has shown that (1) he will likely prevail on the merits of the appeal, (2) he will suffer irreparable injury if the stay is denied, (3) other parties will not be substantially harmed by the stay, and (4) the public interest will be served by granting the stay. *See First Amendment*, 584 F.Supp. at 636 (quoting *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir.1970); *see also Halderman v. Pennhurst State School & Hospital*, 451 F.Supp. 233, 235 (E.D.Pa.1978); *Philadelphia Counsel of Neighborhood Organizations v. Adams*, 451 F.Supp. 114 (E.D.Pa.1978); *Resident Advisory Board v. Rizzo*, 429 F.Supp. 222, 224 (E.D.Pa. 1977). The inquiry in determining a motion for stay pending appeal is similar to that in determining a motion for grant of preliminary injunctive relief. *See Pennhurst*, 451 F.Supp. at 235; *Evans*, 424 F.Supp. at 878. Therefore, while these four "factors structure the inquiry ... no one aspect will determine its outcome. Rather, proper judgment entails a delicate balancing of all

elements." *Constructors Assoc. of Western Pa. v. Kreps*, 573 F.2d 811, 835 (3d Cir.1978) (factors relevant to grant of preliminary injunction). These four factors must be examined to guide the court in the exercise of its discretion in this civil rights class action.

1. *Likelihood of Success*

Because the District Attorney is requesting a stay of the consent order itself until his right to intervene and oppose it is determined, in deciding whether to grant a stay, the court must determine the likelihood of the District Attorney's success not only on his motion to intervene but on his appeal in opposition to the consent order if the motion to intervene is resolved in his favor.

■ An Order denying a motion to intervene is a final appealable order. *E.g., McKay v. Heyison*, 614 F.2d 899, 903 (3d Cir.1980); *McClune v. Shamah*, 593 F.2d 482, 485 (3d Cir.1979); *Commonwealth v. Rizzo*, 530 F.2d 501, 504 (3d Cir.1976), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (quoting *Philadelphia Electric Co. v. Westinghouse Electric Corp.*, 308 F.2d 856, 859 (3d Cir.1962), *cert. denied*, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963)). An appeal may be "taken from both aspects of an order denying intervention where it is claimed that the applicant had an absolute right to intervene, and, alternatively, that the district court abused its discretion in denying permissive intervention." *McClune*, 593 F.2d at 485 (citing *Philadelphia Electric*, 308 F.2d at 959)). Therefore, the District Attorney may appeal the Order denying his motion to intervene.

■ However, the court believes that the District Attorney is unlikely to succeed on the merits even though it is difficult for a district court to consider the likelihood of an appellant's success on appeal. This consideration necessitates a prediction whether the district court was in error. It would be highly unusual for a district court judge to come to this conclusion immediately after a decision on the merits because the decision

itself represents the judge's reasoned decision as to what was legally correct. The court believes that the inquiry must be modified in accordance with the view of Judge Pollak expressed in *First Amendment*. In granting a stay pending appeal where the law was unsettled, he stated,

> If the question is whether I think that the balance of probability is that I was wrong and that my order will be set aside on appeal, that is not my view. If that were my assessment I would not have decided the merits as I did.
>
> I do not, however, think that whether a stay should be granted must depend on my concluding that I was probably in error. If I am satisfied that there is a reasonable possibility—albeit not a probability—that I was in error, it seems to me that the equities would then shift strongly towards granting a stay.

584 F.Supp. at 638.

■ Here only whether the standard of review for intervention as of right is plenary may be be viewed as unsettled. *See United States v. City of Philadelphia*, 798 F.2d 81 (3d Cir.1986) (in affirming denial of intervention as of right assumes, without deciding, that review is plenary). In its memorandum of December 31, 1986, this court explained the reasons for denial of the District Attorney's motion to intervene. This court found that the District Attorney had failed to meet the threshold intervention requirement of timeliness. At 619–621. The court also found that the District Attorney did not have a "direct, substantial, legally protectable interest in the proceedings." At 621–623 (quoting *Dodson v. Salvitti*, 77 F.R.D. 674, 676 (E.D.Pa.1977)). Finally, the court determined that any purported interest of the District Attorney was adequately represented by the City defendants. At 623–624. This court's decision was based on well settled law in the Third Circuit.

"Permissive intervention rulings are of course reviewed under an abuse of discretion standard." *United States v. City*, 798 F.2d at 90. In exercising its discretion to deny the application for permissive intervention, the district court determined that while common questions of law or fact existed between the main action and a proposed cross-claim by the District Attorney against the City defendants, the application for permissive intervention should be denied because granting it would not paint "a fuller picture of the conditions [at issue]," *Christy v. Hammel*, 87 F.R.D. 381, 395 (W.D.Pa.1980), and would result in delay and prejudice to the existing parties. At 623–625.

In making these determinations, the district court considered the relevant factors in reliance on long standing precedent and articulated its reasons at length. There does not seem to be a reasonable possibility that its decision will be overturned on appeal. However, even if this court were in error on every finding made in denying the District Attorney's motion to intervene, the court would still be compelled to find that the District Attorney is not entitled to a stay pending this appeal because it is highly unlikely that the District Attorney will ultimately succeed on the merits of his appeal of the court's entry of the consent order even if permitted to intervene.

The injunctive provisions of the consent order are subject to appeal as of right pursuant to 28 U.S.C.A. § 1292(a)(1) (West 1966 & Supp.1986). However, if the district court's denial of the District Attorney's motion to intervene is upheld, the District Attorney would clearly be without standing to appeal the consent order. In *Rizzo*, 530 F.2d 501, the Court of Appeals held that "one properly denied the status of intervenor cannot appeal on the merits of the case." 530 F.2d at 508 (citing *Hoots v. Commonwealth of Pennsylvania*, 495 F.2d 1095 (3d Cir.), *cert. denied*, 419 U.S. 884, 95 S.Ct. 150, 42 L.Ed.2d 124 (1974). Even if the district court's Order denying the District Attorney's motion to intervene were reversed and the District Attorney's motion to intervene were granted, the District Attorney would still lack standing to appeal the consent order. The consent order resulted from a settlement between the plaintiff-prisoner class and the City defend-

ants. The Order also provided for dismissal without prejudice of two of the Commonwealth defendants. It did not affect the rights of the remaining Commonwealth defendant, Jay C. Waldman. Similarly, it would not have affected the rights of the District Attorney had he been permitted to intervene as a party defendant.

"The general rule is that in order to have standing to appeal, the appellant must be privy to the record and aggrieved by the order appealed from." *In re Eastern Sugar Antitrust Litigation*, 697 F.2d 524, 527 (3d Cir.1982). The interests the District Attorney asserts in this action are insufficient under the reasoning of *Cobb v. Aytch*, 539 F.2d 297 (3d Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977), and *Graddick v. Newman*, 453 U.S. 928, 102 S.Ct. 4, 69 L.Ed.2d 1025 (1981) (Powell, J. in Chambers), to grant him standing to appeal a consent order by which he is not bound even if as a result of his appeal he became a party defendant.

In *Cobb*, a prisoner civil rights class action alleging that transfers between county and state prison institutions were violative of the plaintiff class's rights under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, the Court of Appeals held that the interests of party defendants, the District Attorney and Commissioner of Police, were insufficient to confer standing to appeal an order approving a settlement entered into by other defendants. They had no statutory or other authority to determine the circumstances requiring inmate transfer and they were not enjoined from performing any lawful duties. But the defendant Superintendent of the Philadelphia prisons did have standing to appeal because the order removed authority that the Pennsylvania General Assembly had granted to him. 539 F.2d at 299.

Here the consent order at issue did not diminish any right or authority of the District Attorney to administer Philadelphia prisons or enjoin the District Attorney from performing any duty imposed by law. This court found that, as in *Cobb*, any injuries suffered by the District Attorney are indirect and insufficient to grant standing to appeal the entry of this consent decree even if the motion to intervene were granted.

In his in chambers opinion in *Graddick*, a prisoner class action alleging unconstitutional conditions of confinement, Justice Powell discussed the reasons for denial of the Alabama Attorney General's motion for stay of an injunction upon denial of the Attorney General's motion to intervene as a party defendant. The motion for stay was denied for failure to establish either irreparable injury to any cognizable interest or standing to assert that interest. Justice Powell stated:

> Even if [Attorney General] Graddick's allegation of irreparable injury were accepted, he had made no showing that he was the proper official to assert that claim. Graddick's original application presented no state law basis for his attempt to assert the rights of Alabama citizens generally. His standing to represent Alabama's interests in this matter was not self-evident in the usual context of his case. Alabama statutes had vested responsibility for the prison system in the Governor, and the Governor, who is also the state's chief executive officer, opposed Graddick's application. The Governor averred that he, not the Attorney General, properly represented the state's interest in this case.

453 U.S. at 934, 102 S.Ct. at 8.

Here also the Mayor of the City of Philadelphia opposes the District Attorney's application. The Mayor of the City of Philadelphia and the other defendants named herein, all of whom are very adequately represented by the City Solicitor, are the proper representatives of the public interest because of their legal responsibilities in the matters the subject of this action. The District Attorney's interest in public safety which he shares with other elected officials does not enable him to represent the public interest in holding persons accused of crime or criminals in confinement where that duty has clearly been vested in others

by state law. The District Attorney has not shown that he has the right to intervene, that he should have been granted permisison to intervene, or that he has standing to appeal from the consent order even if he did intervene. It is settled law that a party cannot appeal from a decision which is not adverse to him. *Cobb*, 539 F.2d at 300.

Finally, if the district court were in error in all these matters, the Court of Appeals would still determine if such error was harmless. *United States v. City*, 798 F.2d at 90; *see also Halderman v. Pennhurst State School and Hospital*, 612 F.2d 131, 134 (3d Cir.1979) (applying harmless error analysis to denial of motion to intervene for purpose of appealing). The District Attorney's objections to the proposed settlement were stated on the record for the consideration of the court with the consent of the parties. The district court has already considered all the District Attorney's reasons for disapproval of the consent order in connection with his attack on the inadequacy of the City Solicitor's representation. The district court has nevertheless determined that the consent decree is in the public interest and should be approved for the reasons articulated on the record at the time the consent order was entered and in a memorandum opinion subsequently filed. The opposition to this settlement by the District Attorney has not and would not convince the district court to compel the plaintiff class to pursue litigation against a defendant it does not choose to sue and preclude it from terminating litigation against defendants who seek a settlement that is in the interest of all parties agreeing to it and is also in compliance with the Constitution of the United States.

Because the District Attorney was accorded the right to appear and be heard in opposition to the settlement, denial of his motion to intervene would be at most harmless error unless the Court of Appeals were to conclude that the district court abused its discretion in approving the settlement. Considering the history of this prolonged litigation, the possible termination of the related *Jackson v. Hendrick* litigation (in which denial of intervention by the District Attorney was affirmed by the Pennsylvania Supreme Court) and the settlement agreement, the terms of which the class believes to be in its interest and with which the City defendants are willing to comply, this court does not believe that approving settlement of this litigation will be found abusive of its discretion.

## 2. *Irreparable Injury to the District Attorney*

The District Attorney asserts that absent a stay pending appeal, he will suffer irreparable injury because "hundreds of prisoners must be released." District Attorney's Memorandum at 6. On the date the consent order was entered, approximately 4,300 prisoners were housed in the Philadelphia prison system, including 250 inmates housed in the partially completed Philadelphia Industrial Correction Center ("PICC"). The consent order requires the City defendants to reduce the population in stages: as of March 9, 1987, the population of the Philadelphia prison system may not exceed 4,100 inmates; as of May 11, 1987, the population may not exceed 3,950 inmates; as of July 13, 1987, the population may not exceed 3,750 inmates. The population must stay at or below 3,750 inmates until the opening of the downtown detention facility. The consent order also specifies population limits for each facility within the system. If the population of one or more of the facilities exceeds the maximum allowable population, the City defendants are required to seek the release of these inmates being held either on the lowest bail or persons sentenced to the Philadelphia prisons with less than sixty (60) days remaining on their sentences. However, the release of inmates charged with, or convicted of, murder or forcible rape will not be sought. Nor will the release be sought of any person who would constitute an imminent threat to public safety or to his own health, safety or welfare be sought.

The District Attorney has failed to show that a massive release will occur from the phased-in population limits under the con-

sent order. He has failed to show that if the releases provided for in the consent order occur, his legitimate interests will be harmed. The injury asserted is insufficient to convince the court that a stay of the consent order pending the District Attorney's appeal is warranted.

Under the court's consent order, massive releases will not be required. The City defendants in their brief in opposition aver that plans have been developed to reduce the population of the Philadelphia prisons without such releases. The District Attorney has not provided the court with any reason to believe that the City defendants are in error in their belief that they can comply with the prison population limits provided for in the consent decree or that, with reasonable cooperation of the courts and other public officials, they will fail in their efforts. The Chief Justice of Pennsylvania, Robert N.C. Nix, Jr., announced on January 14, 1987, that persons in pretrial detention shall have priority in state court criminal trial listings. The court is unwilling to assume that the systemic reforms that will be instituted must be unsuccessful.

Even if releases were required to comply with the population limits, the District Attorney has failed to meet his burden of showing an irreparable injury to him. The District Attorney states, "[a]s court statistics establish, many of these released defendants will commit new crimes or fail to appear for trial. These harms, once they occur, cannot subsequently be remedied. Thus, unless a stay is granted, the District Attorney's right to appeal will be rendered substantially meaningless." District Attorney's Memorandum at 7.

The District Attorney provides no support for this statement. If relying on statistics presented at the evidentiary hearing on his motion to intervene by the testimony of witness Maria Terpollili, Senior Supervisor, Pretrial Services Unit, Court of Common Pleas of Philadelphia County, the data presented by Ms. Terpollili was unworthy of consideration and was in part ruled inadmissible. The District Attorney attempted to show through her testimony that a high percentage of criminal defendants released under the *Jackson v. Hendrick* [3] program were rearrested or failed to appear for trial. The methodology used in preparing the ratios presented to the court was so flawed that the ratios were meaningless if not misleading. The calculated "failure to appear" rates also did not differentiate between a person whose failure to appear was caused by a lack of notice and one who simply chose not to appear. The District Attorney was unable to present comparable statistics for other pretrial detainees released on O.R. or cash bail. The District Attorney argued that if additional pretrial detainees were released, the failure to appear and rearrest rates would be even higher. Release of pretrial detainees may have the indirect effect of making the District Attorney's prosecutorial tasks somewhat more difficult but the evidence presented is insufficient to find that the District Attorney would suffer significant irreparable injury by release of pretrial detainees required to bring the prison population into compliance with the consent order. If pretrial detainees present the threat the District Attorney asserts, the solution is to hold prompt trials so that those accused of serious crimes are convicted, sentenced and committed to state custody, rather than continued indefinitely in pretrial status because trial priority is given to those released on bail.

The court does not believe that the injury the District Attorney alleges is sufficient to warrant a stay pending appeal even if the District Attorney had met his burden of showing that the injury would occur. Because this court on its own initiative or under the direction of the Court of Appeals

---

**3.** *Jackson v. Hendrick* is a class action in equity alleging unconstitutional conditions of confinement in Holmesburg Prison filed in the Court of Common Pleas of Philadelphia County in February, 1971. The interrelationship of this action and the *Jackson* litigation is discussed in this court's prior Memorandum and Order. *See Harris v. Pernsley*, 113 F.R.D. 615, 617–618 (E.D. Pa.1986).

can alter the population limits during the period it retains jurisdiction, denial of a stay pending appeal will not render whatever right the District Attorney has to appeal "substantially meaningless." District Attorney's Memorandum at 7. Preferential trial listings where the accused is in detention awaiting trial will alleviate whatever substance there is to the District Attorney's concern about release of most pretrial detainees. At worst, the failure to grant a stay pending appeal will make it more difficult for the District Attorney to prosecute some pretrial detainees released during the pendency of the appeal. In view of the unlikelihood of success on the merits, the minimal injury to the putative intervenor (some of which is within his power to ameliorate), the substantial prejudice to all parties to the settlement agreement if its implementation is delayed, and the public interest in this settlement, that injury is clearly insufficient to warrant a stay.

### 3. Substantial Harm to the Parties

The grant of a stay pending appeal would cause irreparable harm to the plaintiff-prisoner class. The District Attorney argues that no harm would be caused to existing parties by a stay pending appeal because the plaintiff-prisoner class has no legitimate expectation of release. See District Attorney's Memorandum at 7. The District Attorney is correct that the plaintiff-prisoner class has no legitimate expectation of release from prison. But the District Attorney incorrectly assumes that the plaintiff-prisoner class primarily seeks approval of the settlement to obtain release of its members. The class seeks approval of the settlement primarily to achieve a portion of the relief demanded in the amended complaint for allegedly unconstitutional conditions of confinement. Plaintiffs have not only a legitimate expectation but a right to constitutional conditions of confinement. There has been no adjudication of the constitutionality of the conditions of confinement in the City penal institutions, but the City defendants, without any admission of fault or liability, have offered substantial relief to the plaintiff-prisoner class by this settlement. It is against public policy favoring settlement of civil rights class actions to grant a stay pending appeal just because there has been no judicial finding of unconstitutionality in this court. Irreparable injury will be caused to the plaintiff class by granting a stay pending appeal because class members would be forced to continue in confinement under conditions less humane than those obtained if settlement is implemented in accordance with the agreement with the City defendants.

The District Attorney is apparently opposed only to the prison population limits. However, granting his motion would stay all the provisions of the consent decree, even those provisions beneficial to the class to which the District Attorney has stated no objection, such as time to post bail at the Police Administration Building, housing assignment within 72 hours, sleeping quarters, mattresses, bedding and perhaps most important, construction of a downtown 440 bed detention facility by December 31, 1990. The District Attorney offers no reason to delay these substantial benefits and there is none.

### 4. The Public Interest

Granting a stay pending appeal would not be in the public interest. In its opinion approving the settlement agreement, the court articulated the reasons the settlement agreement was in the public interest. See Harris v. Pernsley, 654 F.Supp. 1042, 1056 (E.D.Pa.1987). Staying its implementation is not.

The District Attorney argues that the consent order should be stayed in the public interest because, "[a]bsent a stay, hundreds of prisoners, most of whom are accused felons with criminal records, will be released." The court finds compliance with the court's consent order less disturbing than the District Attorney. The record established that 70% of the persons in Philadelphia prisons are pretrial detainees who are presumed innocent. While some pre-

trial detainees are held on high bail for serious charges, a large number are held on minimal bail and would not be in custody if they had sufficient funds. Low bail suggests that the judicial officer setting it did not consider such defendants a serious threat to the public safety. The District Attorney refuses to recognize in his arguments for a stay of the consent order that there will be no release of prisoners accused or convicted of murder or forcible rape or of prisoners who present an imminent threat to their own or the public safety. Releases might not ever be required if the District Attorney brings cases to trial promptly as required by law and gives priority to cases where the defendant is being held in detention as required by the Chief Justice of Pennsylvania, Robert N.C. Nix, Jr. Statement reported in *The Retainer*, January 28, 1987.[4] Therefore, the public interest does not mandate grant of a stay pending appeal.

Instead, delay in the implementation of this court's order is against the public interest. It would infringe upon the public safety interest in orderly and safe operation of the City prisons. The City defendants argue that the current prison populations strain the resources of the prisons. *See* City defendants' Brief in Opposition at 11. While the City defendants could certainly institute systemic reforms to lower the population in the penal institutions voluntarily, the court recognizes that the City defendants are less likely to do so in the absence of a court order. The interest in protecting public safety by maintaining safe prisons is more pressing than the District Attorney's interest in confining persons accused of non-violent crimes prior to trial where that interest may be met by complying with the Sixth Amendment right to speedy trial.

The strongest public interest is in protection of civil rights guaranteed to all by the Constitution of the United States. Society in general as well as those in custody are severely harmed when persons are held under conditions of confinement that are arguably in violation of the Eighth Amendment. While it may not be as easy to perceive the harm caused, the court believes that it is more serious than that which the District Attorney alleges will occur if the motion for stay is denied. Granting the District Attorney's motion to stay is not in the public interest.

Implicit in the District Attorney's motion to stay is an unarticulated concern that this settlement agreement will impede the administration of his office by requiring compliance with state deadlines for preliminary hearings (10 days) and speedy trials (180 days). No such requirements enter into the population limitations imposed or the release procedures provided. However, the effect of the settlement agreement's implementation may be to require priority in the disposition of the criminal list be given to cases where the untried are being held in detention awaiting trial. There was testimony at the evidentiary hearing that this was not the District Attorney's preference, but this court assumes that the District Attorney as well as the state court administrators will comply with the recent mandate of the Chief Justice of Pennsylvania that this be done in part to meet the crisis created by 10 judicial vacancies and 15 judicial suspensions. No doubt other solutions to this serious problem in court administration will be sought and implemented. But no concern of the District Attorney can justify impeding the momentum for improvement in prison overcrowding accomplished by the entry of the consent

---

**4.** The consent order expressly provides if the maximum allowable population in one or more of the prisons is exceeded:

the City defendants shall seek the release, through the mechanism of the Bail Master appointed by the *Jackson* court or otherwise, of persons being held either on the lowest bail or persons sentenced to the Philadelphia prisons with less than sixty (60) days remaining to serve on their sentences. Such releases shall continue until the maximum allowable population is achieved or restored. City defendants agree not to seek the release of any person charged with, or convicted of, murder or forcible rape; City defendants further agree not to seek the release of any person whose release would constitute an imminent threat to public safety or to the inmate's own health, safety or welfare.

Consent Order, ¶ 4.

order. The Commissioner of the Department of Human Services of the City of Philadelphia, the members of the Board of Trustees of the Philadelphia prison system, the Superintendent of the Philadelphia prison system, the Warden of Holmesburg Prison, the Warden of the Detention Center, the Warden of the House of Corrections, the Managing Director of the City of Philadelphia, the Mayor of the City of Philadelphia, and the City of Philadelphia are all parties to the settlement and agree its terms can be met without undue risk to the community. They and court administrators are ready, willing and able to implement the consent order. This court will not stay the cooperative effort to ensure that conditions of confinement are consistent with the Constitution.

Because the District Attorney has failed to meet his burden of proof on any of the four factors relevant to the grant of a stay pending appeal, the motion for stay pending appeal is denied. An appropriate Order follows.